1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

UNITED STATES  DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARTIN RAY WINERY,

        Plaintiff,

     v.

TODD DAMERON GRAHAM, and
MICHAEL ANDERS,

        Defendants.

_____/

No. C 06-3618 MHP

<u>**MEMORANDUM AND ORDER**</u>
**Re: Defendants' Motions to Dismiss or
Transfer**

      Plaintiff Martin Ray Winery ("plaintiff") filed this action on June 7, 2006, alleging causes of action for fraud and negligent misrepresentation against defendants Todd Dameron Graham ("Graham") and Michael Anders ("Anders").  Now before the court are defendants' motions to dismiss this action or, in the alternative, to transfer proceedings to the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. section 1404(a).  Having considered the parties' submissions and arguments, and for the reasons set forth below, the court enters the following memorandum and order.

<u>BACKGROUND</u>[1]

      Plaintiff Martin Ray Winery is a California Corporation with its principal place of business in Santa Rosa, California.  FAC ¶ 1.  Defendant Anders is an individual residing in Houston, Texas.  <u>Id.</u> ¶ 3.  Defendant Graham is also an individual residing in Houston, Texas.  <u>Id.</u> ¶ 2.  Plaintiff alleges that Anders and Graham are owners, officers, and/or managers if Vinquor Beverage Co., Ltd. and Vinquor GP, LLC (collectively "the Vinquor Entities"), as well as Eclipse Distribution Services LP ("Eclipse").  <u>Id.</u> ¶¶ 2–3.  Eclipse Distribution Services, LP is a Texas Limited Partnership with its principal place of business in Houston, Texas.  <u>Id.</u> ¶ 4.  Its general partner is Eclipse Distribution

Services, LLC, a company which also has its principal place of business in Houston.  Id. ¶ 5.

Vinquor Beverage Co., LLC is the general partner of Vinquor Beverage Co., Ltd., a Texas limited

partnership, with both companies having their principal places of business in Houston.  Id. ¶¶ 7–8.

Eclipse is currently the subject of a bankruptcy proceeding in the Southern District of Texas.  The

Eclipse Entities and the Vinquor Entities are all identified as "Future Defendants" in plaintiff's First

Amended Complaint.  According to plaintiff, an automatic bankruptcy stay prevents these entities

from being named as defendants, and plaintiff intends to amend its complaint to name these entities

as defendants when the automatic stay has been lifted.  Id. ¶ 9.  At that time plaintiff also intends to

add claims for conversion, unjust enrichment, and imposition of a constructive trust to its existing

claims for fraud and negligent misrepresentation.  Id.

Plaintiff alleges that, in 2004, plaintiff and Eclipse entered into an agreement whereby

Eclipse would act as plaintiff's exclusive distributor of wine in Texas.  Id. ¶ 15.  Eclipse ordered,

and plaintiff delivered, wine through the end of 2005.  Id. ¶ 16.  Plaintiff alleges that Eclipse has

failed to pay for over 2,000 cases of wine, valued at a total of  $140,037.00.  Id.

Plaintiff identifies ten orders between May 2005 and August 2005 whereby plaintiff shipped

wine for which defendant has not paid.  Id. ¶¶ 17–26.  In addition, plaintiff identifies two

transactions in November 2005 involving Cost Plus which form the basis of its fraud and

misrepresentation claims.  Id. ¶ 27.  According to plaintiff, Eclipse ordered 677 cases of wine from

plaintiff in early November 2005, which had been pre-ordered by Cost Plus.  Id.  Plaintiff requested

that Eclipse obtain a letter of credit before plaintiff would ship the wine.  Id.  Eclipse refused to

obtain a letter of credit, though Graham and Anders represented to plaintiff that Eclipse would "pay

COD on half of the order, and the balance within 48 hours of Cost Plus paying eclipse."  Id.

Plaintiff accepted the terms of the deal and shipped 677 cases of wine to Eclipse.  Id. ¶ 28.

Eclipse paid $20,340 on delivery.  Id. ¶ 29.  However, plaintiff applied this sum to the oldest

outstanding invoices, and therefore claims that the invoice from the Cost Plus transaction is still due

in full.  Id.  Plaintiff therefore alleges that the representations regarding the partial COD and the

promise to pay the balance by Anders and Graham was false.  A similar sequence of events

involving a second Cost Plus pre-order unfolded shortly thereafter.  Id. ¶¶ 30–33.  As with the previous transaction, Eclipse paid for half of the order COD after Graham and Anders represented that they would do so, but plaintiff applied the funds to older invoices and claims that the second Cost Plus invoice remains due in full.  Id.

In addition to these specific allegations, plaintiff generally alleges that Graham and Anders knew that Eclipse did not have sufficient cash flow and assets to pay its wine suppliers in 2005, but nonetheless made repeated written and verbal representations to plaintiff that Eclipse would be able to meet its financial obligations.  Id. ¶¶ 37–38.  Plaintiff further alleges that these representations were designed to induce plaintiff to continue supplying wine to Eclipse, which Eclipse then sold to third parties to their own benefit.  Id. ¶ 38.

Finally, plaintiff claims that Graham and Anders started Vinquor Beverage Co., Ltd. ("Vinquor") in November 2005, transferring substantial assets (including plaintiff's unsold wine) from Eclipse to the new entity.  Id. ¶¶ 39–40.  Vinquor solicited business from plaintiff.  Id. ¶ 44.  Plaintiff believes that Vinquor is a "sham organization run by Eclipse," and ceased dealing with them after making two sales to Vinquor.  Id. ¶ 45.

Plaintiff brought this action against Graham, Anders and the Vinquor Entities on June 6, 2007.  The Vinquor Entities were named as defendants on theories of alter-ego and fraudulent transfer, based on plaintiff's belief that Vinquor is an alter-ego of Eclipse.  Because the Eclipse Entities are in bankruptcy, plaintiffs filed a first amended complaint on September 25, 2006, naming only Graham and Anders as defendants.  Plaintiff's first amended complaint seeks, *inter alia*, $140,037.00 in damages, as well as punitive and exemplary damages and attorney fees.  Defendants Graham and Anders now move to dismiss plaintiff's FAC on the grounds that the court lacks personal jurisdiction over the individual defendants or subject matter jurisdiction over the dispute.  Additionally, Graham claims that the FAC fails to state a claim on which relief may be granted, and that this action is subject to the automatic bankruptcy stay.  Alternatively, defendants seek to have the action transferred to the Southern District of Texas.

UNITED STATES DISTRICT COURT
For the Northern District of California

1    DISCUSSION

2        I.    Subject Matter Jurisdiction (Rule 12(b)(1))

3        U.S. District Courts have original jurisdiction over "all civil actions where the matter in

4    controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . .

5    . citizens of different states."  28 U.S.C. § 1332(a).  When a defendant challenges the amount in

6    controversy requirement, the plaintiff must establish that it does not appear to a legal certainty that

7    the claim is for less than the jurisdictional amount.  Sanchez v. Monumental Life Ins. Co., 102 F.3d

8    398, 401–02 (9th Cir. 1996) (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283,

9    288–89 (1938)).  A plaintiff can survive a motion to dismiss for lack of subject matter jurisdiction

10   that is based on a challenge to the alleged amount in controversy by "showing any arguable basis in

11   law for the claim made."  Musson Theatrical, Inc. v. Fed. Express Corp., 89 F.3d 1244, 1248 (6th

12   Cir. 1996).

13            The court's jurisdiction over this action is premised on diversity.  FAC ¶ 13.  To

14   invoke diversity jurisdiction, a plaintiff must plead that the amount in controversy exceeds $75,000.

15   28 U.S.C. § 1332(a).  Plaintiff's FAC sets forth a prayer for relief in the amount of $140,037.00 in

16   damages, plus exemplary and punitive damages and attorneys' fees.  Graham nonetheless asserts

17   that the amount in controversy requirement has not been met with respect to him because his alleged

18   misrepresentations could only have given rise to a liability of $40,680.  Specifically, Graham asserts

19   that the alleged representation in November that "Eclipse was reorganizing, would begin to make

20   payments on the past due amount and would pay for the Cost Plus orders within 48 hours" had no

21   bearing on fraud or misrepresentation liability arising from pre-November orders.  Because the two

22   Cost Plus orders were each for the amount of $40,680, and half of each order was paid on delivery,

23   Graham claims that the amount in controversy is no greater than $40,680.

24       In response, plaintiff asserts that its claim for punitive damages brings the amount in

25   controversy above the statutory minimum.[2]  In the Ninth Circuit, "[i]t is well established that

26   punitive damages are part of the amount in controversy in a civil action."  Gibson v. Chrysler Corp.,

27   261 F.3d 927, 945 (9th Cir. 2001).  Here, Graham's alleged fraudulent conduct would support a

28

UNITED STATES DISTRICT COURT
For the Northern District of California

4

UNITED STATES DISTRICT COURT
For the Northern District of California

1  claim for punitive damages under California state law.  See CAL. CIV. CODE § 3294(a) (providing for

2  exemplary and punitive damages where a defendant is "guilty of oppression, fraud, or malice").  In

3  response to this argument, Graham claims that, as a matter of law, his alleged conduct is not so

4  egregious as to support plaintiff's claim for punitive damages.  However, the statute itself defines

5  "fraud" as "an intentional misrepresentation, deceit, or concealment of a material fact known to the

6  defendant with the intention on the part of the defendant of thereby depriving a person of property or

7  legal rights or otherwise causing injury."  Id. § 3294(c)(3).  Accordingly, a properly pled cause of

8  action alleging intentional misrepresentation is sufficient to support a claim for punitive damages.

9  See Romo v. Stewart Title of Ca., 35 Cal. App. 4th 1609, 1619 (1995).  Plaintiff has therefore shown

10  that it is not a legal certainty that plaintiff's claim falls below the jurisdictional amount.  The court

11  therefore may assert jurisdiction over the subject matter of this action.

12

13      II.  Personal Jurisdiction (Rule 12(b)(2))

14      Federal courts sitting in California may exercise personal jurisdiction over any nonresident to

15  the extent permitted by due process.  Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.,

16  328 F.3d 1122, 1129 (9th Cir. 2003) (citing CAL. CIV. PROC. CODE § 410.10).  To comport with due

17  process, the defendant must have sufficient minimum contacts with the forum state, and maintenance

18  of the suit must not "offend traditional notions of fair play and substantial justice."  International

19  Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

20      Personal jurisdiction may be based on either general or specific jurisdiction.  American Tel.

21  & Tel. Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996).  General jurisdiction

22  exists when the defendants' contacts with the state are "substantial" or "continuous and systematic,"

23  and it requires that the defendants' contacts approximate physical presence within the state.

24  Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000) (citing

25  Helicopteros Nacionales de Columbia, SA v. Hall, 466 U.S. 408, 415 (1984)).

26      By contrast, specific jurisdiction exists where (1) the nonresident performs some act or

27  consummates some transaction which purposefully avails him of the privilege of conducting

28

UNITED STATES DISTRICT COURT
For the Northern District of California

activities in the forum so as to invoke the benefits and protections of the state's laws; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable.  Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 416 (9th Cir. 1997) (citations omitted).  The purposeful availment requirement is satisfied if the defendant takes some deliberate action within the forum state or creates continuing obligations to forum residents.  Id. at 417.  The defendant need not be physically present in the forum state, "provided that his efforts are purposefully directed toward forum residents."  Id. (internal quotations omitted).

To establish that its claim arises out of or relates to the defendants' forum-related activities, the plaintiff must demonstrate that the contacts constituting purposeful availment gave rise to the current suit.  Bancroft & Masters, 223 F.3d at 1088.  In order to satisfy the requirement, the plaintiff must show that "but for" the defendants' forum-related conduct, the injury would not have occurred.  Myers v. Bennett Law Offices, 238 F.3d 1068, 1075 (9th Cir. 2001); see also Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1322 (9th Cir. 1998).  The contacts must also be "sufficiently related to the underlying causes of action" and "have some degree of proximate causation to be considered for purposes of jurisdiction."  Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 243 F. Supp. 2d 1073, 1085 (C.D. Cal. 2003) (citing Doe v. American Nat'l Red Cross, 112 F.3d 1048, 1051–52 (9th Cir. 1997)).

In all cases, the defendant bears the burden of demonstrating unreasonableness and must put on a "compelling case."  Bancroft & Masters, Inc., 223 F.3d at 1088 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-77 (1985)).  To determine reasonableness, the court must consider (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant of defending in the forum state, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.  Id.

The plaintiff bears the ultimate burden of demonstrating that the court possesses personal jurisdiction.  Dole Food Co. Inc. v. Watts, 303 F.3d 1104, 1108 (9th Cir. 2002).  Where no

1   evidentiary hearing is held, the plaintiff must make only a prima facie showing of jurisdiction.

2   Harris & Rutsky Co. Ins. Servs., 328 F.3d at 1129 (9th Cir. 2003).  While the plaintiff cannot rely

3   solely on the complaint to establish personal jurisdiction, the court must take uncontroverted

4   allegations as true and resolve conflicts between the facts contained in the parties' affidavits in favor

5   of the plaintiff.  American Tel. & Tel. Co., 94 F.3d at 588.

6       Plaintiff does not assert that Graham and Anders are subject to general jurisdiction.

7   Accordingly, to establish specific jurisdiction plaintiff must show that (1) defendants performed

8   some act or consummated some transaction which purposefully availed them of the privilege of

9   conducting activities in California so as to invoke the benefits and protections of the state's laws; (2)

10  the claim arises out of or relates to defendants' forum-related activities; and (3) the exercise of

11  jurisdiction is reasonable.  Cybersell, 130 F.3d at 416 (citations omitted).

12      The first prong is the main point of contention between the parties.  The purposeful

13  availment requirement is satisfied if the defendant takes some deliberate action within the forum

14  state or creates continuing obligations to forum residents.  Id. at 417.  As a preliminary matter,

15  defendants each claim that they are not subject to jurisdiction because their alleged actions were

16  conducted on behalf of Eclipse, and that they are therefore protected by the fiduciary shield doctrine.

17      The fiduciary shield doctrine protects individuals from being subject to jurisdiction solely on

18  the basis of their employers' minimum contacts within a given jurisdiction.  In other words, "[t]he

19  mere fact that a corporation is subject to local jurisdiction does not necessarily mean its nonresident

20  officers, directors, agents, and employees are suable locally as well."  Colt Studio, Inc. v. Badpuppy

21  Enterprise, 75 F. Supp. 2d 1104, 1111 (C.D. Cal. 1999).  Though employees are not necessarily

22  subject to liability in a given jurisdiction due to the contacts of their employers, "their status as

23  employees does not somehow insulate them from jurisdiction.  Each defendant's contacts with the

24  forum State must be assessed individually."  Calder v. Jones, 465 U.S. 783, 790 (1984).

25  Accordingly, an employee, officer or director may be subject to personal jurisdiction where the

26  individual is a "primary participant" in the alleged wrongdoing.  Id.  The assertion of personal

27  jurisdiction based on the primary participant theory is appropriate where the individual had "control

28

UNITED STATES DISTRICT COURT
For the Northern District of California

7

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1    of, and direct participation in the alleged activities."[3]  <u>Wolf Designs, Inc. v. DHR Co.</u>, 322 F. Supp.

2    2d 1065, 1072 (C.D. Cal. 2004) (citing <u>Transgo, Inc. v. Ajac Transmission Parts Corp.</u>, 768 F.2d

3    1001, 1021 (9th Cir. 1985)).  Absent such participation and control, a defendant's limited contacts

4    with the forum state will not suffice to establish personal jurisdiction where such contacts arise only

5    by virtue of the individual's status as an employee of a company.  <u>See</u> <u>Colt Studio</u>, 75 F. Supp. 2d at

6    1112.

7         Accordingly, defendants' conduct may give rise to personal jurisdiction if they directly

8    participated in and controlled the allegedly tortious activities.  Because plaintiff raises distinct

9    jurisdictional facts with respect to each defendant, the court will consider jurisdiction over each

10   defendant separately.

11        A.    <u>Anders</u>

12        With respect to Anders, plaintiff alleges that Anders "initiated and was otherwise actively

13   involved in negotiations with Martin Ray's employees in California regarding the purchase of nearly

14   1,300 cases of wine from Martin Ray in California."  Opp at 8.  Plaintiff claims that Anders engaged

15   in multiple email exchanges and telephone calls with Russell O'Hare, one of plaintiff's sales

16   managers, related to the Cost Plus transactions, in which detailed aspects of the transactions were

17   negotiated.  <u>Id.</u>  Plaintiff further claims that Anders negotiated payment terms relating to Eclipse's

18   outstanding debt to plaintiff.  <u>Id.</u>  Specifically, plaintiff identifies four emails and two telephone calls

19   whereby Anders allegedly made misrepresentations to plaintiff.  As plaintiff alleges that Anders'

20   representations in this regard were false and/or fraudulent, Anders' participation in making these

21   representations on behalf of Eclipse may subject him to personal jurisdiction provided he was also in

22   control of the negotiations.

23        Anders acknowledges his involvement in the communications, but claims that he had no

24   control.  Specifically, Anders claims that he did not have any responsibility for the financial or

25   accounting affairs of the Eclipse Entities, and that as Eclipse's Operations Officer he had primary

26   responsibility over warehousing and distribution.  Anders Dec. ¶ 6.  Anders further claims that he

27   surrendered his equity interest in the Eclipse Entities in October 2005, and therefore had no control

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1  over the companies by the time the Cost Plus transactions were negotiated the following month.  Id.

2  ¶¶ 53, 55–56.  Rather, Anders claims he became an independent consultant for Eclipse.  Id. ¶ 59.  As

3  for the payment plan, Anders claims that he was not involved in devising the plan, but was

4  instructed by Graham to present the plan to plaintiff.  Id. ¶ 63.  Graham, according to Anders,

5  handled all of the financial and accounting functions for Eclipse.  Id.

6       Anders claims that his lack of control is borne out by plaintiff's evidence.  The email dated

7  November 1, 2005 is a message from Graham to Richard Maiewski, Eclipse's former president.

8  O'Hare Dec., Exh. 1.  Anders forwarded the message to O'Hare at Maiewski's request.  Id.  Anders

9  further claims that the statements he allegedly made during the November 11, 2005 phone call with

10  O'Hare (O'Hare dec. ¶¶ 9–10) were the "kind of statements . . . normally made between purchasers

11  and sellers of product in the ordinary course of business."  Anders Rep. at 5.  The November 11,

12  2005 email from Anders to O'Hare provides Anders' contact information and contains an optimistic

13  comment about the future relationship between the two companies.  O'Hare Dec., Exh. 2.  The

14  November 28, 2005 email is a solicitation from O'Hare to Anders regarding plaintiff's new wines,

15  sent after the second Cost Plus order was made.  O'Hare Dec., Exh. 3.  During the second identified

16  phone call, Anders allegedly extended an offer on behalf of Eclipse, and stated the terms of the COD

17  and future payment.  O'Hare Dec. ¶ 15.  Finally, in a November 28, 2005 email Anders passes along

18  a statement from Graham regarding forthcoming payment.  O'Hare Dec., Exh. 4.

19       Relying on these six contacts between Anders and California, plaintiff has failed to show that

20  Anders exerted any control over the negotiations, or was doing anything other than acting on behalf

21  of Eclipse at the instructions of other Eclipse personnel.  Anders' contacts with California were

22  extraordinarily limited, and he was not the primary participant in any of the transactions he was

23  involved with.  Accordingly, plaintiff has failed to show minimum contacts justifying the exercise of

24  personal jurisdiction over Anders.

25      B.    <u>Graham</u>

26       Graham's purported contacts with California are the statements attributed to him in Exhibits

27  1 and 4 to the O'Hare Declaration described above.  With respect to the first email, Graham asserts

28

9

1   that his statement in the email is directed at Maiewski, not at plaintiff.  Plaintiff received Graham's

2   message because Maiewski asked Anders to forward it.  Graham's purposeful involvement in this

3   communication was therefore purely internal and unrelated to California.  Regarding the second

4   email, Graham asserts that this email is irrelevant because it was sent after plaintiff had accepted the

5   terms of the second Cost Plus transaction.

6          With respect to the fiduciary shield test, these alleged contacts present the inverse problem.

7   Though they indicate some degree of control over the negotiation process on the part of Graham, the

8   involvement of Maiewski and Anders in relaying Graham's ideas to plaintiff suggests that Graham

9   was not himself directly involved in making the key representations to plaintiff that give rise to

10   plaintiff's claims against Graham.  Accordingly, plaintiff has likewise failed to establish personal

11   jurisdiction over Graham.

12          C.       Reasonableness

13          Even if the court were to find that Anders and Graham's alleged involvement in the

14   transactions constituted purposeful availment and gave rise to plaintiff's claims, the court would

15   nonetheless be required to determine that it would be reasonable to assert personal jurisdiction over

16   the two individual defendants.  The factors that courts consider in determining reasonableness are

17   similar to the factors relevant to a motion to transfer venue.  See Bancroft & Masters, Inc., 223 F.3d

18   at 1088.  As discussed infra, the court finds that these factors weigh heavily in favor of transferring

19   this action to the Southern District of Texas rather than asserting jurisdiction in California.  Based

20   on this analysis, the court finds that defendants have made a compelling case that asserting personal

21   jurisdiction under these circumstances would be unreasonable.

22          In sum, plaintiff's evidence indicates that the proper defendant in this action is Eclipse, and

23   plaintiff has failed to establish personal jurisdiction over the individual Eclipse personnel involved

24   in the allegedly fraudulent transaction.  Where the court lacks personal jurisdiction over the

25   defendants it may dismiss the complaint or transfer the action to a district where personal

26   jurisdiction can be exercised over them.  See 28 U.S.C. § 1631 (where "court finds that there is a

27   want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ...to any

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1   other such court in which the action...could have been brought....) (emphasis added).  Indeed, this

2   Circuit has held that it is an abuse of discretion to fail to consider transfer.  Miller v. Hambrick, 905

3   F.2d 258, 262 (9th Cir. 1990) ("Normally transfer will be in the interest of justice because normally

4   dismissal of an action that could be brought elsewhere is 'time-consuming and justice-defeating.'"

5   (quoting Goldlawr, Inc. V. Heiman, 369 U.S. 463 (1962))).

6        It is clear from defendant's motion under section 1404(a) and other papers filed in this action

7   that jurisdiction can be obtained over Anders and Graham in the Southern District of Texas.  In their

8   motion to transfer venue they acknowledge that there are actions against them, as well as a

9   bankruptcy proceeding involving Eclipse,  pending in that District.  Therefore, the court will transfer

10   this action to the United States District Court for the Southern District of Texas.

11        In view of the finding of lack of personal jurisdiction and the concomitant transfer of the

12   action, this court will not reach the motions to dismiss for failure to state a claim, the motion to

13   transfer venue and the motion to stay by reason of Eclipse's bankruptcy proceeding.

14

15   CONCLUSION

16        For the reasons stated above, the court DENIES defendants' motion to dismiss for lack of

17   subject matter jurisdiction and GRANTS defendant's motion that this court lacks personal

18   jurisdiction and transfers this action to the United States District Court for the Southern District of

19   Texas for all further proceedings.  The Clerk of Court shall transfer the file to the Clerk of Court for

20   the Southern District of Texas forthwith.

21

22

23        IT IS SO ORDERED.

24

25   Dated:   March 28, 2007

26   _____

27   MARILYN HALL PATEL
    United States District Court Judge

28   Northern District of California

11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

**ENDNOTES**

1.  Unless otherwise indicate, background facts are taken from the complaint and the declarations of the parties.  The allegations of the complaint are considered to be true for the purposes of defendants' 12(b)(6) motion only.

2.  Additionally, plaintiff claims that "Graham's fraudulent representations related not only to the purchases of wine made in November 2005, but also to the establishment of a payment plan in November 2005 regarding Eclipse's outstanding balance."  Opp. at 16.  Plaintiff therefore claims that all of its damages arise from Graham's fraudulent representations alleged in the FAC.  Plaintiff's theory of liability raises questions of reliance and causation with respect to Eclipse's pre-existing debts.  However, because plaintiff's punitive damages claim brings this action above the statutory minimum, the court declines to reach this issue.

3.  The fiduciary shield doctrine may likewise be ignored where the corporation is the alter ego of the individual defendant, or where there is an identity of interest between the corporation and the individuals.  Davis v. Metro Prods., Inc., 885 F.2d 515, 521 (9th Cir. 1989).  However, plaintiff is admittedly reluctant to pursue causes of action based on alter ego theories for fear that its claims will be subject to the automatic bankruptcy stay.  Plaintiff has therefore stated that his claims against Graham and Anders are in their purely individual capacities, and the alter ego exception to the fiduciary shield doctrine is inapplicable.